UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ROSE MESSEROUX,

                 Plaintiff,

                                    **<u>ORDER</u>**

       -against-                         11-CV-05343 (PKC)

MAIMONIDES MEDICAL CENTER, *et al.*,

                 Defendants.

-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      This Court dismisses this action, in its entirety, for the reasons set forth below.

I.   <u>Background</u>

      On November 1, 2011, Plaintiff commenced this action, on behalf of her deceased husband's estate and herself.  (Dkt. No. 1.)  The relevant factual allegations are as follows:

- From October 20, 2009 to October 23, 2009, Plaintiff's husband sought emergency medical attention from, and was admitted to, Defendant Maimonides Medical Center ("Maimonides") for "uncontrolled hypertension and elevation in cardiac enzymes." (*Id.* ¶¶ 28-30.)  He was "prescribed the medications Vasotec and Coreg" and discharged from Maimonides. (*Id.* ¶¶ 32-34.)

- On October 23, 2009, "shortly after taking the medications (Vasotec and Coreg) previously prescribed," her husband returned to Maimonides seeking additional, emergency medical attention, and was discharged on the same day. (*Id.* ¶¶ 35-38.)

- In the late evening on October 23, 2009, her husband was "rushed by EMS to [a different hospital's] Emergency Department" and, on October 24, 2009, was "admitted to [its] MICU due to uncontrolled hypertension and a cerebrovascular stroke." (*Id.* ¶¶ 39, 41.)

- On November 1, 2009, while at the other hospital, her husband died. (*Id.* ¶ 43.)

The first count of the Complaint claims that Maimonides violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, when it "failed to provide proper medical screening and treatment to [Plaintiff's husband] and to ensure that [his] emergency condition was stable before discharging [him] from [Maimonides's] hospital facility." (Dkt. No. ¶ 1.)  The EMTALA claim is the *only* one of Plaintiff's claims over which this Court exercises original jurisdiction. (*Id.* ¶ 2); *see* 28 U.S.C. § 1331.

The Complaint also asserts two state law claims against Maimonides and four of its doctors (collectively, "Defendants") for (i) medical malpractice and (ii) loss of consortium. (Dkt. No. 1 ¶¶ 53-62.)  These claims, however, are subject solely to this Court's discretionary exercise of supplemental jurisdiction. (*Id.* ¶ 2); *see* 28 U.S.C. § 1367.

On March 25, 2013, Defendants requested leave to file a motion to dismiss based on the arguments that (i) the EMTALA claim is time-barred and (ii) this Court should decline to exercise its supplemental jurisdiction over the remaining state law claims. (Dkt. No. 19.)

II.  EMTALA Claim

At a pre-motion conference on May 30, 2013, Plaintiff's counsel conceded on the record that the EMTALA claim is barred by the two-year statute of limitations for such claims. Accordingly, the EMTALA claim must be dismissed. *See, e.g.*, *Leonhard v. U.S.*, 633 F.2d 599, 609 n.11 (2d Cir. 1980) (district courts may order *sua sponte* "dismissal on statute of limitations grounds," where "the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted").

Even without this concession, this Court would have reached the same conclusion. EMTALA provides that "[n]o action [for civil enforcement] may be brought . . . more than two years after the date of the violation with respect to which the action is brought." 42 U.S.C. §

1395dd(d)(2)(C).  Because the last possible "violation" upon which Plaintiff bases the EMTALA claim occurred on October 23, 2009, Plaintiff should have asserted this claim by no later than October 23, 2011, instead of waiting until November 1, 2011 to do so.

Additionally, had Plaintiff argued that this action was timely as she did not discover the underlying violations until her husband's death on November 1, 2009, this argument would not have saved the EMTALA claim.  The plain language of Section 1395dd(d)(2)(C), set forth above, indicates that the statute of limitations for the EMTALA claim runs from "the date of the violation," *id.*, not the date of the *discovery* of the violation.  Indeed, courts have dismissed EMTALA claims as time-barred, even though these claims were asserted within two years of the plaintiffs' purported discovery of the underlying violations.  *See Owens v. Presbyterian Hosp.*, No. 94 Civ. 6004, 1995 WL 464950, at *1-2 (S.D.N.Y. Aug. 4, 1995) (dismissal of claim filed on August 18, 1994, where, up until August 18, 1992, plaintiff had not discovered injury that "went undetected" as a result of defendant's "inadequate care" on December 25, 1986); *see also Curry v. Advocate Bethany Hosp.*, 204 F. App'x 553, 555, 557 (7th Cir. 2006) (affirming dismissal of claim filed on February 25, 2005, where plaintiff's mother died in February 2003 due to defendants having "misdiagnosed and improperly treated her condition" in August 2002).  Here, Plaintiff has not even argued that the belated discovery of the underlying violations allows her to assert the EMTALA claim more than two years after these violations.

The EMTALA claim is thus DISMISSED WITH PREJUDICE as time-barred.

III.   Remaining State Law Claims

Having dismissed the EMTALA claim, the sole claim over which this Court exercises original jurisdiction, this Court considers whether it should retain supplemental jurisdiction over Plaintiff's remaining state law claims.  28 U.S.C. § 1367(c) (providing that "district courts may

decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction").

The Supreme Court has held that:

> When the balance of [judicial economy, convenience, fairness, and comity factors] indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Carnegie-Mellon Univ. v. Cohill* ("*Cohill*"), 484 U.S. 343, 350 (1988) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966)).  The *Cohill* Court added that, "in the usual case in which all federal-law claims are eliminated before trial," these factors will, on balance, "point toward declining to exercise jurisdiction over the remaining state-law claims." 484 U.S. at 350 n.7.

This action is no different than the "usual case," in which "federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." *Id.* at 350 & n.7. Since this action is still "in its early stages," two factors—judicial economy and convenience—strongly favor declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

In *Valencia v. Lee*, 316 F.3d 299 (2d Cir. 2003), for instance, the Second Circuit held that "there were judicial economies to be achieved by declining to exercise supplemental jurisdiction [over plaintiffs' state law claims]," where plaintiffs had already "conce[ded] that they had no viable federal claims" at a "relatively early stage of the case." *Id.* at 306-307.  The case remained at a "relatively early stage," because, although "most of the anticipated pretrial discovery had been completed," "[n]o substantive motions had been filed; no judicial opinions had been issued; and the case was not yet ready for trial." *Id.* at 306.

4

Such is the case here: (i) discovery is still underway; (ii) this Court has not yet considered or decided any "substantive" motions; and (iii) this action is far from trial-ready.

Neither concerns about fairness nor comity outweigh the advantages of achieving judicial economy and convenience. By filing this action in federal court after the expiration of the two-year statute of limitations for the EMTALA claim, Plaintiff is effectively seeking to "impose upon [this Court] what is in effect only a state law case" of medical malpractice. *United Mine Workers of Am.*, 383 U.S. at 727. Because "it appears that . . . [Plaintiff's] state claim[s] constitute[] the real body of [this action], to which the [EMTALA] claim is only an appendage, the state claim[s] may fairly be dismissed." *Id.* By declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, this Court also, "as a matter of comity," avoids rendering a "[n]eedless decision[] of state law." *Id.* at 726.

Accordingly, this Court declines to exercise supplemental jurisdiction over the remaining state law claims, which are hereby DISMISSED WITHOUT PREJUDICE.[1]

SO ORDERED:

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: May 31, 2013
       Brooklyn, New York

---

[1]     Although this Court dismisses the remaining state law claims *without* prejudice, Plaintiff may not re-assert these claims, unless she is able to establish some basis for this Court's jurisdiction over these claims.

5